UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| -vs- | : | No. 3: 23-CR-26-07 |
| MAURICE FAULKNER, | : | (JUDGE MANNION) |
| Defendant | : | |

GOVERNMENT'S SENTENCING MEMORANDUM

The defendant, Maurice Faulkner, is presently scheduled for sentencing before this Honorable Court on August 26, 2024, after having entered a guilty plea to Count 1 of the Indictment, the charge of Conspiracy to Distribute and Possess with Intent to Distribute Fentanyl, a Schedule II Controlled Substance, in violation of 21 U.S.C. § 846. The government hereby submits this sentencing memorandum as an aid to the Court in rendering a just sentence in this matter.

Pursuant to the terms of the plea agreement in this case (Doc. 397), the parties agreed to recommend that at least 280 grams of fentanyl, but less than 400 grams of fentanyl, are attributable to the defendant for the purposes of sentencing. *Id.* at ¶ 4.

1

## The Offense:

The offense conduct is set forth in detail in the PSR. (*See* ¶¶ 7-16). This investigation began on February 18, 2021, after the drug overdose death of a twenty-eight-year-old woman in Wilkes-Barre. (¶ 7). The overdose victim was found alone in her vehicle with the engine still running. Three small blue pills – each stamped "M-30" – were found inside her vehicle. The investigation would reveal that the victim had purchased four small blue pills from a Wilkes-Barre based drug dealer and that she died after ingesting one of the pills.

As the investigation progressed, investigators learned of a wide-ranging drug trafficking conspiracy involving the trafficking of fentanyl pills sent via mail from Arizona to Pennsylvania. The indictment presently before the Court charges a conspiracy beginning in January 2020 through the date of the indictment – February 14, 2023. Many of the defendants in this indictment were ordering large quantities of fentanyl pills from, and transmitting cash payments to, one of several fentanyl sources in Arizona, including Davon Beckford and Tyla Griffin (both charged in a separate indictment), Shane Burns and/or Christina Patacky-Beghin. Packages containing fentanyl pills were then sent to

2

Pennsylvania from Arizona via the U.S. Postal Service.

Maurice Faulkner's role in the conspiracy involved sending money via "CashApp" to Davon Beckford's "sister" and co-conspirator, Mercedes Smith, in Pennsylvania, or directly to Beckford in Arizona. Beckford would then send packages containing fentanyl pills to an address associated with Faulkner in Ashley, Luzerne County. Images of tracking receipts found in Beckford's phone were tracked to the Ashley address in Luzerne County. The IP address used to track some of the mail packages is subscribed to Maurice Faulkner. Text messages between Beckford and Mercedes Smith (Beckford's money collector) indicate that Faulkner, aka "Moe," would be meeting on multiple occasions with Mercedes Smith to provide her with money, which Smith would later send to her brother, Beckford.

Upon receipt of the pills from Beckford, Maurice Faulkner would distribute the pills in the Luzerne County area.

The parties agree that at least 280 grams but less than 400 grams of fentanyl are attributable to Twyman for purposes of sentencing.

**The Presentence Report:**

The U.S. Probation Office prepared a Presentence Investigation Report (PSR) in this case. The PSR indicates that the defendant's total offense level is **25** and the criminal history category is **III**, resulting in an advisory guideline range of **70 to 87 months**. PSR ¶ 68.

The PSR indicates that the defendant has prior criminal convictions for the following offenses:

¶ 33 **Petit Larceny (Arrested in 2004)** On March 15, 2004, Maurice Faulkner grabbed a female victim's arm and stole her cellular telephone in Brooklyn, NY.

¶ 34 **Robbery-3rd Degree (Arrested in 2004)** On April 16, 2004, Maurice Faulkner used a firearm and forcibly stole a motorcycle from a male victim in Queens County, NY.

¶35 **DUI- Highest Rate of Alcohol (Arrested in 2010)** On April 25, 2010, Maurice Faulkner was pulled over by the police for speeding and having an inoperable taillight in the 500 block of Lackawanna Avenue in Scranton. While speaking with Faulkner, police observed him to have bloodshot eyes, slurred speech, and a strong odor of alcohol. Faulkner was arrested after he failed filed sobriety tests. A subsequent blood alcohol test revealed a blood alcohol content of .209%. (The legal limit is up to .08%).

¶36 **Disorderly Conduct (Arrested in 2011)** According to a Scranton Police Department report, on April 15, 2011, Maurice Faulkner was involved in a motorcycle accident on Spruce Street in Scranton. The defendant told officers that his name was Gerald Johnson.

¶37 <u>Criminal Use of a Communication Facility (Arrested in 2015)</u>

On March 3, 2015, Lackawanna County detectives utilized a confidential informant to make a purchase of cocaine base (crack) from Maurice Faulkner near Meade Avenue and Court Street in Scranton. A second controlled purchase of cocaine base was arranged from Maurice Faulkner on March 11, 2015, near Green Ridge Street and Dickson Avenue in Scranton.

¶38 <u>Driving Without a License (Arrested in 2019)</u> The defendant was issued a traffic citation.

The Criminal History Category here is III.

### The Sentencing Process:

District courts engage in a familiar three-step process when sentencing criminal defendants:

> A district court must begin the process by first calculating the applicable sentencing guidelines range. After that initial calculation, the court must then rule on any motions for departure and, if a motion is granted, state how the departure affects the guidelines calculation. Finally, after allowing the parties an opportunity for argument, the court must consider all of the § 3553(a) factors and determine the appropriate sentence to impose, which may vary from the sentencing range called for by the guidelines.

*United States v. Tomko,* 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

As indicated, in the PSR, the U.S. Probation Office determined that the defendant's total offense level is **23** and her criminal history category is **III,** resulting in an advisory guideline range of **70 to 87**

months.

### The Sentencing Factors:

Under the sentencing statute, the sentence to be imposed needs to reflect the seriousness of the offense, promote respect for the law, provide for just punishment, deter others from engaging in similar conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2).

### Fentanyl is Killing Americans at an Unprecedented Rate:

Here, the defendant is responsible for the distribution, and possession with intent to distribute, between 280 and 400 grams of fentanyl.  The crime is serious.  Fentanyl is a highly addictive and dangerous substance.  The amount for which the defendant is accountable is significant, particularly when one considers that the use – literally – of just a few grains or specks of fentanyl can result in overdose or death.  In fact, the investigation in the present matter began with the accidental overdose death of a twenty-eight-year-old woman in Wilkes-Barre.

More than 1 million people have died since 1999 from a drug overdose.[1] In 2021, 75% of drug overdose deaths involved an opioid, including prescription opioids, heroin, and fentanyl.[2] Overdoses involving opioids killed more than 80,000 people in 2021 and nearly 88% of those deaths involved synthetic opioids like fentanyl.[3]

Provisional data shows that drug overdose deaths in the United States surpassed 100,000 in 2022.[4] Fentanyl was responsible for 73,654 of those deaths.[5] Fentanyl deaths have increased every year for the past decade.[6]

In April 2022, DEA administrator Anne Milgram outlined the current fentanyl overdose threat and stated, "*Fentanyl is killing Americans at an unprecedented rate.* Already this year, numerous mass-overdose events have resulted in dozens of overdoses and deaths. Drug traffickers are driving addiction, and increasing their profits, by mixing fentanyl with other illicit drugs. Tragically, many overdose

---

[1] Data Overview | Opioids | CDC
[2] *Id.*
[3] *Id.*
[4] Provisional Data Shows U.S. Drug Overdose Deaths Top 100,000 in 2022 | Blogs | CDC
[5] Are fentanyl overdose deaths rising in the US? (usafacts.org)
[6] *Id.*

victims *have no idea* they are ingesting deadly fentanyl, until it's too late."[7] (This is precisely what happened in the present investigation. The accidental overdose victim in Wilkes-Barre thought she was ingesting a Percocet pill.)

According to the Pennsylvania Attorney General's Office, the opioid epidemic is the number one public health and public safety challenge facing Pennsylvania.[8] Pennsylvania's overdose death rate is 71.9% higher than the national average overdose death rate.[9] Over 6% of nationwide overdose deaths occur in Pennsylvania.[10] As this Court is well aware, the opioid epidemic continues to impact the Middle District of Pennsylvania.

In August 2023, the Pennsylvania Department of Health issued their findings regarding fatal and non-fatal overdoses in Pennsylvania in 2021.[11] In 2021, 5,356 drug overdose deaths occurred in

---

[7] https://www.dea.gov/press-releases/2022/04/06/dea-warns-increase-mass-overdose-events-involving-deadly-fentanyl
[8] Opioid Battle – PA Office of Attorney General
[9] Drug Overdose Death Statistics [2023]: Opioids, Fentanyl & More (drugabusestatistics.org)
[10] Drug Overdose Death Statistics [2023]: Opioids, Fentanyl & More (drugabusestatistics.org)
[11] Pennsylvania Overdose Data Brief 2021.pdf (pa.gov)

Pennsylvania and 85% were confirmed to be opioid related.[12]

Importantly, for every drug overdose that results in death, there are many more nonfatal overdoses.[13] People who have had at least one overdose are more likely to have another.[14] Between January 1, 2018, and July 15, 2023, Pennsylvania emergency service personnel administered 89,360 doses of Naloxone.[15] During that same time period, there were 52,570 emergency room visits for opioid overdoses.[16] Accordingly, there are scores of individuals living with addiction and committing crimes to support their habits. Crime increases when addicts deplete their savings and bargain away their possessions to support their habit.

Interviews of drug users and treatment personnel indicate that users often experience multiple drug overdoses in the course of their drug use, and "widespread naloxone availability has resulted in many

---

[12] Pennsylvania Overdose Data Brief 2021.pdf (pa.gov)
[13] Understanding Drug Overdoses and Deaths | Drug Overdose | CDC Injury Center
[14] Understanding Drug Overdoses and Deaths | Drug Overdose | CDC Injury Center
[15] Pennsylvania Opioids | PA Open Data Portal
[16] Pennsylvania Opioids | PA Open Data Portal

lives saved."[17]  In addition to the overdoses, the economic and social costs to the community are overwhelming.  Fentanyl, heroin, and other opioids tear apart families, and the community is left to support loved ones left behind.  It has impacted families across all racial groups, geographic regions and socioeconomic classes.[18]

This Court should consider these statistics and the havoc that fentanyl and the other opioids are wreaking in our community when it imposes its sentence in this case.

Maurice Faulkner was part of a wide-spread fentanyl trafficking conspiracy that wreaked havoc in our community. The conspiracy in which he participated was responsible for distributing thousands of fentanyl pills on the streets of Northeastern Pennsylvania.

From the government's perspective, the important factors set forth in 18 U.S.C. §3553(a) which the Court must consider in imposing a sentence on this defendant include the need for the sentence to:

- reflect the seriousness of the offense,

---

[17] *Id.*
[18] https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7829093/

- promote respect for the law,

- provide just punishment for the offense,

- afford adequate deterrence to criminal conduct and

- protect the public from further crimes of the defendant.

(*See* 18 U.S.C. § 3553(a)).

Based on the above, the government recommends that this Court impose a sentence which is within – *and not below* – the advisory guideline range of **70 to 87 months.**

                Respectfully submitted,

                GERARD M. KARAM
                United States Attorney

            By: /s/ *ROBERT J. O'HARA*
                ROBERT J. O'HARA
                Assistant U.S. Attorney

Date:  August 20, 2024

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United States Attorney for the Middle District of Pennsylvania and is a person of such age and discretion as to be competent to serve papers.

That on August 20, 2024, she served a copy of the attached:

**GOVERNMENT'S SENTENCING MEMORANDUM**

By email to:

Attorney Joseph P. Kalinowski
Counsel for the Defendant

/s/ Terri Pendolphi

Legal Assistant